UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SIDNEY DURELL HILL, #724440,

        Plaintiff,

v.

RANDALL GROVER,

        Defendant.

_____/

Case No. 2:23-cv-156

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant's motion for partial summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 14.)

Plaintiff — state prisoner Sidney Durell Hill — filed suit pursuant to 42 U.S.C. § 1983 on August 16, 2023. In his verified complaint, Hill asserted that while he was incarcerated at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan, KCF employees violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. (ECF No. 1, PageID.10-15.) At this stage of the case, the only claims remaining are Hill's First Amendment retaliation claims against Defendant Corrections Officer (CO) Grover in his personal capacity for threatening to shake down Hill's cell, shaking down Hill's cell under false pretenses,

threatening to send Hill to segregation, and issuing Hill a false misconduct ticket. (ECF No. 8, PageID.61-62, 64.)

CO Grover now moves for partial summary judgment. Grover concedes that Hill exhausted his claim that Grover issued him a retaliatory misconduct ticket but contends that Hill failed to exhaust his other retaliation claims. (ECF No. 15, PageID.84-85.) More specifically, CO Grover argues that Hill's claims that Grover threatened to tear up Hill's cell, searched Hill's cell under false pretenses, and threatened to send Hill to segregation were grievable claims. But Hill failed to pursue the claims through Step III of the Michigan Department of Corrections (MDOC) grievance process prior to filing suit. (*Id.*)

Hill offers two arguments in response. First, Hill says that he exhausted *all of his claims* via the misconduct hearing process because he presented the hearing officer with sworn statements from other prisoners attesting that Grover had threatened to shake down Hill's cell under false pretenses. (ECF No. 16, PageID.112.) He attached the same to his misconduct appeal. Second, Hill says that he also exhausted his claims via the grievance process. (*Id.*, PageID.113.) According to Hill, he filed a grievance setting forth his claims on July 11, 2023. Hill admits that he filed his Step III grievance appeal, and therefore received his Step III response, *after filing his complaint*. (*Id.*) But Hill contends that because he exhausted at least one claim prior to filing his complaint, he could exhaust the other claims during the pendency of the lawsuit. (*Id.*, PageID.114.)

2

The undersigned respectfully recommends that the Court grant Grover's motion for partial summary judgment. No MDOC policy or other authority provides that a prisoner may exhaust retaliation claims unrelated to the misconduct hearing process through the misconduct hearing process. Furthermore, no authority supports Hill's contention that a prisoner may exhaust claims in his original complaint *after filing suit*, as long as at least one claim in the original complaint was exhausted prior to filing suit. In the undersigned's opinion, Grover has established that there are no genuine issues of material fact, and that Hill failed to exhaust his grievable retaliation claims – i.e., the claims unrelated to the misconduct ticket – prior to filing suit.

If the Court accepts this recommendation, only Hill's First Amendment retaliation claim against Grover in his individual capacity for issuing Hill a retaliatory misconduct ticket will remain.

## II.    Factual Allegations

Atkins's verified complaint contained the following relevant factual allegations, as set forth in this Court's October 16, 2023, screening opinion:

> Plaintiff alleges that on July 11, 2023, he assisted another prisoner with writing a grievance on Defendant Grover. (ECF No. 1, PageID.7.) While Plaintiff was writing the grievance, Defendant Grover walked into the area with grievance forms and saw Plaintiff. Defendant Grover said, "Oh you don't need a grievance? I see you already have one." (*Id.*) Later that evening, Defendant Grover was staring at Plaintiff in an intimidating manner and asked "Hey, what's up Hill?" (*Id.*, PageID.7–8.) Plaintiff noticed the smirk on Defendant Grover's face and asked if Grover was going to tear up Plaintiff's cell in retaliation for helping another prisoner write a grievance on him. (*Id.*, PageID.8.) Defendant Grover responded that it was on the agenda. (*Id.*) Plaintiff stated that would be retaliation and a constitutional violation, but Defendant

> Grover countered that it would not be retaliation if he smelled alcohol. (*Id.*)  Plaintiff then stated that he was sure a number of the prisoners listening to the exchange would write an affidavit for Plaintiff. (*Id.*)
>
> Prisoner Beamon then stepped forward and volunteered to write an affidavit, prompting Defendant Grover to threaten Prisoner Beamon with an out of place ticket. (*Id.*)  Defendant Grover asked Plaintiff if he had just threatened to write a lawsuit against him, and Plaintiff stated that he had.  Defendant Grover told Plaintiff that was considered insolence and ordered Plaintiff away from the desk.
>
> . . . .
>
> Defendant Grover told Plaintiff that he was very close to going to the hole and ordered him to leave the area.  Plaintiff complied and proceeded to the game room where he began writing a grievance on Defendant Grover. (*Id.*)  However, Defendant Grover then entered and asked for Plaintiff's I.D. card.  Plaintiff then completed the grievance and placed it in the prison mailbox. (*Id.*)
>
> The next afternoon, Plaintiff was called to the control center to be reviewed on a class II misconduct ticket for insolence written by Defendant Grover.  In the misconduct ticket, Defendant Grover falsely asserted that Plaintiff said, "I dare you to go shake down my area of control because I would be happy to write up a lawsuit." (*Id.*)
>
> Plaintiff pleaded not guilty to the misconduct and received a hearing by [former] Defendant Moran on July 17, 2023. [Former] Defendant Moran refused to allow Plaintiff to present the affidavits written by prisoners who had witnessed the conversation between Plaintiff and Defendant Grover, even though administrative rules required him to allow Plaintiff to present his documented defense.  [Former] Defendant Moran ultimately found Plaintiff guilty of the misconduct. (*Id.* at PageID.9.)  Plaintiff filed an appeal, which was denied by [Former] Defendant Beaulieu. (*Id.*)
>
> On July 20, 2023, Defendant Grover and non-party Corrections Officer Wilson searched Plaintiff's area of control, claiming that they smelled alcohol.  No alcohol was found, but Plaintiff's possessions were thrown all over the cell. (*Id.*)  On July 24, 2023, Defendant Grover again searched Plaintiff's area of control, claiming to have smelled alcohol.

(ECF No. 8, PageID.56-57.)

4

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC

custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

8

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct, the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue. *Id.*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory

9

Class II or III misconduct, he or she must file an appeal based on retaliation.  *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R. & R. adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596.  For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

### V.     Analysis

CO Grover moves for summary judgment as to Hill's claims that Grover retaliated against Hill by threatening to shake down Hill's cell, shaking down Hill's cell under false pretenses, and threatening to send Hill to segregation. (ECF No. 15, PageID.84-85.) In other words, Grover moves for summary judgment as to all but Hill's claim that Grover issued a retaliatory misconduct ticket against Hill. Grover says that these claims were grievable, but that Hill did not pursue them through Step III of the grievance process prior to filing suit. (*Id.*) As set forth above, Hill offers two arguments in response: (1) that he exhausted all of his claims via the misconduct hearing process when he presented prisoner affidavits touching on his claims, and (2) that he exhausted his claims via the grievance process. (ECF No. 16, PageID.112-114.)

The undersigned first addresses Hill's argument that he exhausted all of his claims via the misconduct hearing process. Simply put, Hill points to no MDOC policy or other authority that permits him to exhaust ordinary, grievable retaliation claims through the misconduct hearing process. The MDOC grievance policy explains that claims *directly related* to the misconduct hearing process are non-grievable, and that a prisoner must exhaust those claims via the appeal processes set forth in MDOC Policy Directive 03.03.105. *See* MDOC Policy Directive 03.02.130 at ¶ J (9), (11). As established by the Sixth Circuit in *Siggers*, that includes claims that a prison official issued a retaliatory misconduct ticket. 652 F.3d at 693-94. Indeed, Grover concedes that Hill exhausted his retaliatory misconduct claim through the appeal process set

11

forth in MDOC Policy Directive 03.03.105. (ECF No. 15, PageID.84.) But neither the MDOC grievance policy nor *Siggers* directs a prisoner to MDOC Policy Directive 03.03.105 to exhaust claims unrelated to the misconduct hearing process. Thus, the relevant administrative remedy for Hill's claims that Grover retaliated against him by threatening to shake down Hill's cell, shaking down Hill's cell under false pretenses, and threatening to send Hill to segregation was the MDOC's grievance policy.

Hill contends that he satisfied the aims of the PLRA by putting the MDOC on notice of his claims during his misconduct hearing, but "[t]he PLRA has been interpreted to require 'proper exhaustion' meaning that a prisoner must 'complete the administrative review process in accordance with the procedural rules, as defined not by the PLRA, but by the prison grievance process itself.'" *Lee v. Willey*, 789 F.3d 673, 677 (quoting *Jones*, 549 U.S. at 218) (cleaned up). As such, the affidavits that Hill presented during his misconduct hearing and attached to his misconduct appeal are irrelevant to whether he exhausted his claims that Grover retaliated against him by threatening to shake down Hill's cell, shaking down Hill's cell under false pretenses, and threatening to send Hill to segregation through the available administrative remedy: the MDOC grievance process. The undersigned therefore turns to Hill's argument that he exhausted his grievable retaliation claims through the grievance process.

The grievance process outlined in MDOC Policy Directive 03.02.130 is not completed for exhaustion purposes until the prisoner receives the Step III response.

12

*Ross v. Duby*, No. 1:09-CV-531, 2010 WL 3732234 (W.D. Mich. Sept. 17, 2010) (determining that the plaintiff had not exhausted his claim because the response to his Step III grievance appeal was issued after the complaint was filed). The Step III Grievance Report provided by CO Grover reflects that Hill had not pursued any relevant grievances through Step III of the grievance process prior to August 10, 2023. (ECF No. 15-3, PageID.100.) The Step III grievance appeal provided by Hill does not contradict the report. Instead, it demonstrates that Hill filed the relevant Step III grievance appeal on August 25, 2023. (ECF No. 16-1, PageID.121.) And he received the Step III response at some point after September 12, 2023. (*Id.*, PageID.122.) Hill filed his complaint in this case on August 16, 2023.

Exhaustion is a precondition to filing suit. *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (explaining that a plaintiff cannot exhaust administrative remedies "during the pendency of the action"). But Hill argues that because he exhausted his retaliatory misconduct claim prior to filing to suit, he was allowed to exhaust his other claims during the pendency of the action. (ECF No. 16, PageID.114.) Hill bases that argument on the Sixth Circuit's decision in *Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017).

In *Mattox*, the Court of Appeals held that "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Id.* at 595. But those are not the circumstances of this case. And Hill provides no authority to suggest

13

that a prisoner may exhaust claims in his original complaint after filing suit as long as one of the claims in the original complaint was properly exhausted. Accordingly, it is the undersigned's opinion that CO Grover has discharged his summary judgment burden; there are no genuine issues of material fact, and Hill failed to exhaust his grievable retaliation claims.

## VI.  Recommendation

The undersigned respectfully recommends that the Court grant Grover's motion for partial summary judgment (ECF No. 14). No MDOC policy or other authority provides that a prisoner may exhaust retaliation claims unrelated to the misconduct hearing process through the misconduct hearing process. Furthermore, no authority supports Hill's contention that a prisoner may exhaust claims in his original complaint after filing suit, as long as at least one claim in the original complaint was exhausted prior to filing suit. In the undersigned's opinion, Grover has established that there are no genuine issues of material fact, and that Hill failed to exhaust his grievable retaliation claims – i.e., the claims unrelated to the misconduct ticket – prior to filing suit.

If the Court accepts this recommendation, only Hill's First Amendment retaliation claim against Grover in his individual capacity for issuing Hill a retaliatory misconduct ticket will remain.

Dated:  January 24, 2024                                   /s/ *Maarten Vermaat*
                                                            MAARTEN VERMAAT
                                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).